For the record, my name is Anthony Ury. I represent the plaintiff, Ms. Meador Ronald-Jones. This case represents a case that went to a jury trial, and the plaintiff has filed an appeal following a defense verdict. Plaintiff, the issues on appeal, I'll go first with the issue with respect to denial of injury instruction represented by the case of Mitchell v. Trawler Racer, which I believe is a seminal case in maritime law. Plaintiff argued at trial that transitory conditions, even those that exist for a few moments, can render a vessel unseaworthy. In support of that evidence, the last exhibit in plaintiff's excerpts is the Coast Guard video. The Coast Guard was hovering over the vessel, lowering pumps to save the vessel after a mayday had been called while the crew had their survival suits on. Plaintiff was denied that jury instruction, the transitory language. That's – it's stated precisely in my reply brief, number four. Plaintiff was entitled to jury instruction indicating that transitory conditions, even those that exist only for a few moments, may cause unseaworthiness. That denial was harmful error because that was a theory of plaintiff's case. The Misty Blue was unseaworthy for approximately two to three hours. So your theory was that even if the boat was seaworthy at the time it left the dock, it became unseaworthy later? Was that it or – No one precisely knows when that hose clamp loosened up to a point where all the fresh water was automatically pumped by the pump and filled the forepeak. But they do know when the boat instantaneously went to a 30-degree list, there was something seriously wrong. The captain called – How long did it take from the time the boat left the dock until it went over the – About 12 hours, approximately. They left King Cove, Alaska. This happened about 60 miles, I believe, south of St. Paul – St. George Island, approximately 12 hours of sailing. The boat instantaneously, without warning, without notice to anybody, went to a 30-degree list. The captain called a mayday. The Coast Guard arrived in short order with pumps, took the video. The rail was under – the exhibit shows the starboard rail underwater, the bow down. Following that, the undisputed evidence of trial was that the captain instructed Ronald Johns to go down to the engine room to restart the motor for the steering. The captain – the testimony in the exhibit showed that the captain, who was a prior engineer for a year, went down, restarted the generator. The loss of electricity because the fuel was starved because of the list. He went down and restarted the generator, forgot to restart the steering motor, told Ron Johns, who was up in the wheelhouse, go down and restart that motor. Ron says, I had my survival suit on. The boat was at a 30-degree list. I slipped down the stairs, hit the galley floor. My adrenaline was going. I went to the engine room, followed the orders, came back to the wheelhouse. The captain then told me to go on deck and start getting rid of the crab pots that were stacked there on the starboard side to level the boat. He followed that order. The undisputed testimony was that he used a small cheater bar, the only tool that was available on deck, used all the strength and got the first pot loose because the other pots were pushing on it when the boat was laying over. He felt a second back pain. He says the first back pain was when he hit the floor in the galley floor. The second back pain was when he got done jettisoning that pot. Now ‑‑ Can I ask you a question about this temporary unseaworthiness issue? As I understand the problem, the reason the boat listed in the first place was because of the loose hose clamp which allowed water to leak into, is this front of the boat? Yeah. They call it the forepeak. It's a compartment up forward, a storage, a huge storage compartment. That water was to be stored in its own storage tanks. All right. But factually, it seems that both parties agree that that loose hose clamp existed when the boat left the dock. Well, no one knows exactly when the hose clamp became that loose or when it loosened. Well, what I understand that Misty Blue argued was that they had had some maintenance or repair on that hose and that they seemed to be arguing that it was your client's responsibility to have looked at that before the ship left the dock. So if you go with their theory and accept their theory that all the damage was caused by the loose hose clamp, then it was unseaworthy when it left the dock. That's their theory. Their theory was that somebody, and they opined it must have been Mr. Johns, who loosened the hose clamp. Well, didn't they say he neglected to check it before they left? And he said that's not my – that wasn't my responsibility. I wasn't the engineer. The only witness that was called by the defense, the vessel owner, was a witness who was not there. He was the prior captain, Herb Gernkoff. Right. He opined that it must have been this person. But the only direct testimony at trial was that from Mr. Johns, who said, I was rigging crab pots away from the vessel. My uncle, who was the captain and the prior engineer, took care of getting the vessel ready. That's the only direct testimony at trial. Now, plaintiff made an offer of proof because Captain Johns was available to testify. He waited in the hallway for a day. Defense doctors called out of order. He had high blood pressure. It's in his affidavit. It was part of the motion for reconsideration, also a motion for a new trial. He came back two days later to testify as a rebuttal witness. He was not allowed. The offer of proof was in his affidavit was that this did not happen this way. In other words, he states clearly. But that offer of proof came with the affidavit in connection with the motion for judgment not abstaining the verdict, didn't it? Well, as I recall, Your Honor, I think I made the offer of proof on the record. You said he was going to testify to something about the pay for the people to be there in time and then also made some reference to the clamp, I think. Right. He was going to testify about the procedures to get the vessel ready because the vessel had been winterized. And that was one of the issues that I made an offer of proof on. He was both captain and engineer. He could have cleared up the issue. The jury was concerned because he could have testified on the issue. He would have been cross-examined, of course. Yes. And he had some interest in the situation, and he was related to John. That's correct. Maybe the jury would have believed him, and maybe they wouldn't. Correct. That's correct. So what you've got, what you have now is an affidavit that's not the result of cross-examination. It's just what he would say. Precisely. Would have said. Yes. One of the issues on appeal was that the exclusion of the captain's testimony was harmful and prejudicial to Plaintiff's case because that's evidenced not by what the jury, the note the jury sent to the court. The jury says, why are we as a jury not hearing from Rick Johnson? The issue is whether the district court abused its discretion in not permitting that witness to be called at that point in the case, given the showing that you made at the time you requested that he testify. That's really the issue, isn't it? Well, that's part of the issue. But I – it is the issue, Your Honor. But also, this Court's holding in Simeonov v. Heiner, the Court went a step further because I think that was the issue in Simeonov. The district court had reduced by 50 percent the damage award. And this Court said in Simeonov v. Heiner that we depart from our history and that if a seaman is injured while following a direct order from the superior officer, we do not apply the comparative fault rule. But I think also in Simeonov and also in Farr v. Ensign Machinery, it seems to me that what this Court was saying is that as a matter of law now, we are not going to assess comparative fault. So my argument, at least I think I made the argument fairly clear, is that in this case, the real issue should have been not a defense verdict, but at least what if the serve as a mitigation of damage, comparative fault, because there's no – say Ron Jodin was the engineer. Say he loosened that hose clamp accidentally, forgot to tighten it. Wouldn't that be assumption of the risk? I mean, the Court's – this Court said no matter how egregious a seaman's negligence is, it doesn't serve as a bar to recovery. It serves only to mitigate damages. The Supreme Court said that in SOFIC, Exxon v. SOFIC. It was followed by this circuit in Farr v. Ensign Machinery. And it was carried a step further in Simeonov v. Hiner. But you get to that only if you find negligence or unseaworthiness in the first place, don't you? Well – Otherwise, there's no point to even consider contributory negligence. Well, that's correct. In this case, if plaintiff would have been given the transitory language instruction in Mitchell v. Trawler-Racer, the jury would have had a proper jury instruction to connect plaintiff's argument to. Why wasn't instruction number 18 sufficient to inform the jury that it could find unseaworthiness as a temporary matter? That instruction says a seaman cannot recover for a temporary unseaworthy condition created solely by the seaman's own negligence or breach of any employment duty. And from that instruction, it would seem obvious that he could recover for a temporary unseaworthy condition that wasn't created by his own negligence. Well, I believe for two reasons that instruction did not – was improper and did not cover this case properly. One is because my reading of Mitchell v. Trawler-Racer, that jury instruction is improper because Mitchell is very clear that transitory conditions permit recovery. Now, secondly, the other part of the language that you just recited talks about not being able to recover for a seaman's own negligence. That theory seems to me to be a primary duty rule argument. This Court in Moore v. The Sally J. has said that that argument is a disfavored defense. It should only apply when there's an express breach of an employment duty by a licensed officer, because the logic being every time a seaman gets injured on a boat, the boat owner or captain can say, he should have known better. He should have not done it that way. It's his own fault. So this Court recognized that argument and said, if we're going to bar a seaman from his own recovery because he's at fault, or he breached the term in condition of his employment, i.e., engineer, say Ron was the engineer, then it better be expressed in his contract, it better be crystal clear that his contract said he was the engineer and these were his duties, and he must be a licensed officer who accepts that duty. I believe that it's a disfavored defense. That's my position. So that jury instruction is flawed for those two reasons. It misstates Mitchell. It misstates the Sally J. Moving on just briefly. Harmful error for denial of the transitory condition argument in the jury instruction, because that's what we really had. We had a condition that happened without notice. It happened only for a short period of time. I believe that's a transitory condition. I believe that's what the Supreme Court meant in Mitchell. Secondly, the – I believe the Court abused its discretion by not allowing the captain to testify. In this case, it allowed a reasonable jury to, I believe, conclude that Ron Johnson had no credibility, because Captain Johnson was offered as a witness, referred to an opening. The captain is going to testify about what happened. The captain had been on the boat for a year. The captain stayed with the vessel after the incident. The jury obviously was very concerned about that. They wrote a note. It's in the docket. Why and when are we not hearing from Captain Johnson? No response from the Court. I think it left the jury, at the end of the day, saying the jury – the plaintiff's argument isn't supported by what he promised. And the jury instructions to make the argument of transitory unceivableness and breach of the other one, the one that was equivalent to Simeona v. Hiner. I used the Hull v. American Steamship instruction, which I think is – it basically states that Simeon is not at fault for his injury unless – when he's fallen in direct order, unless he spurns a safer alternative. In other words, if the seaman's told to go across the deck and tie up the boat and he sees a bucket of oil that just spilled on the deck and he decides to run through the oil as opposed to going around it, he shouldn't recover if he does something – you know, spurns a safer alternative. In this case here, we – there was simply no evidence that there were – considering the vessel was almost capsizing, that there was a safer way to do the jobs that he was told to do and that he spurned a safer choice. You want to reserve the remainder of your time? Yes, I'd like to. I've got 336 left. Thank you, Your Honor. Thank you. Thank you, Your Honor. Good. Police report. My name is Mario Madden. I represent the defendants, Misty Blue, in this case. I think we need to keep in mind what plaintiff is asking you to do here. He's asking you to set aside a verdict arrived after months of litigation and six-day trial, a verdict not in favor of the defendant, based on arguments that, for the most part, weren't preserved below. I want to work through each of the four assignments of error quickly and just explain why they're not well taken. First of all, plaintiff signs error to the trial court's failure to instruct on a transitory unseaworthiness condition. First of all, I want to point out that this, as well as his other assignment of error about a jury instruction, was not adequately preserved. And why was that? I'm looking at transcript page, I guess it's supplemental excerpts of record 044, and we have Mr. Ury saying, in discussing the jury instruction, I just also wanted to take exception to the rejection of the Mitchell v. Trawler racer instruction. Transitory conditions, even those that exist for only a few moments, may constitute unseaworthiness. And then he also objects to the fact, following that, that the district court didn't give the other instruction he submitted. So, frankly, I don't see the basis for your argument that he didn't preserve those instructions. Well, Your Honor, I agree that the objection was made pro forma. However, I would What do you mean pro forma? The objection was made. But the objection requires more than just an objection. It also requires a specific explanation as to why. He did. He cited cases. That's not a sufficient explanation? I really think that's the weakest argument you have, because we have it on the record that he made this objection. So let's look at some of your others. I understand your point, Your Honor. The second reason why that instruction, the transport condition instruction, was unnecessary is something you put your finger on. The concept of transitory unseaworthiness was encompassed within the instructions that were given to the jury. The general seaworthiness instruction, instruction number 17, is broad enough to encompass the idea of a temporary. Well, if that's so, now, did you oppose the transitory seaworthy instruction that Mr. Urey submitted? Were you at the trial? Your Honor, I have to admit I was not at the trial. Well, I assume you opposed it because the Court didn't give it. But I don't see how instruction 18 really makes it clear to the jury that they could find unseaworthiness from a transitory condition, given that it says – it doesn't really directly say that. You really have to make an inference from that. Your Honor, I – They're supposed to give really clear instructions to a jury so they know how they're supposed to view the evidence before them? They're supposed to give instructions that do adequately allow them to assess the evidence. That's correct. Did it adequately reflect the theory of the case? I think it did. If you look in conjunction with number 17, which talks about seaworthiness in general, and it says – and this is our supplemental excerpt of Record 45 – a vessel is unseaworthy if the vessel or any of its parts or equipment is not reasonably fit for its intended purpose. And I think there's nothing in here that restricts that to any particular temporal situation. But there's nothing there that says that you can find unseaworthiness if it arises on a transitory basis, as Mitchell – as Mitchell instructs. Well, I agree, Your Honor, but I think it's clear that, as we – as you pointed out in Los Angeles Memorial Coliseum, that a court doesn't have to use the exact words proposed by a party. It just has to give the instruction to allow the jury to intelligently determine the issues presented. And I think – And that's what I'm – that's what I'm wondering about, because there's nothing that directly talks about how – and I'm not familiar with maritime law, so when I read it, read the instruction, I – I – there was nothing there that said to me really clearly this whole notion of the transitory nature of seaworthy and unseaworthiness is – is a possibility as a basis for holding the shipowner liable. I think – I think your – your reading might be stronger if there was something in there that would restrict the jury from finding a temporary unseaworthy condition. I think if there were some instruction that had been given that said that it had to exist when it left the dock or it couldn't have been something that happened on the way, if there had been instruction like that, perhaps there would be confusion. My – our point is that given the instructions that were presented to the jury, the jury could have looked at the vessel at the time of the incident and looked at the video that was presented to them, listened to the testimony that was presented and said, boy, that vessel at that point isn't fit for its purpose. It's unseaworthy, regardless of whether it's – If it was unseaworthy, and I gather this was your argument, that somehow Mr. Johns was culpable for making it unseaworthy by whatever he did with the loose hose clamp on the freshwater tank. Well, that's – that's our – that is certainly part of our argument. Our argument was that if there was an unseaworthy condition, and I won't – I don't – we don't concede that this was an unseaworthy vessel at that point. The plaintiff has said that it's undisputed. I disagree with that. No one has conceded this was unseaworthy. In fact, the jury found exactly the opposite. And we're not saying that that was incorrect. The jury was entitled to find that. Look at the evidence. Weigh that factual decision and that factual determination. Decide at that point whether it was seaworthy or not. However, if it did find that it was unseaworthy, it's our position – and this is our second argument as far as – there's no prejudice here because there was evidence presented that Mr. Johns was the engineer of this vessel. And granted, he denies that. But the jury's entitled to listen to him and listen to the evidence to make their own conclusion that he was the engineer of the vessel. He would have been responsible for that hose clamp. And he failed to do his duty. And therefore, whatever happened to his vessel was his fault. And under Instruction 18, which I would remind the Court came in without objection from the plaintiff, although he's now claiming that it is an improper instruction. I think his argument on that is that that was okay to be given, but you should have also given something else. Okay. I didn't hear – I heard him say that it was an improper instruction, period. But regardless, it came in without objection. And based on the instructions that were before the jury, which are the law of the case, regardless of whether they're legal or not, as long as they're not objected to, the jury would have found, more probably than not, that it was his fault that this happened. So it's – just to understand this unseaworthiness concept. Yes. Okay. Let's assume that the hose – okay. Assuming that when the ship left the dock, the hose was adequately secured. It was the way it was supposed to be when it left the dock. So you – the ship is seaworthy then. Okay. Okay. Assuming that. Okay. Assume – yeah, no, it's just for sake of argument. Okay. And then assume that somehow Mr. Johns did something that unloosened the hose clip. Does that make the vessel unseaworthy, or is it still seaworthy because it's still fit for its intended purpose? Well, seaworthiness is admittedly a somewhat squishy issue. It's a factual determination. If you look at the entirety of the vessel at the point, or if it's a particular thing like slipping on a ladder or something, you look at that. But in this case, I would argue it's the entirety of the vessel. You look at the vessel, and there has to be a determination whether it could be reasonably used for its intended purpose at that point. And its intended purpose would be the fishing trip it intended to take. Is that it? Well, that's – I think it could be the fishing – I don't know if it has to be exactly fishing at that point, because they weren't fishing at that point. They were heading out to the – sorry. Yeah, but to have a boat be reasonably – to be seaworthy, I guess that's in a – it's not in perfect condition. Correct. But it's reasonably adequate or whatever for the purpose intended. And the purpose intended was to have the boat go out and get some crabs and come back, I think. That's correct. That was on its own trip. So a jury would have to find that the boat fit that definition of seaworthiness. Certainly it could while it was at the dock. And if later on out to sea the clamp comes off, the boat nevertheless could have been reasonably fit at the time it was at the dock. Correct. But it would have been reasonably fit at the time the clamp just came off. Well, Your Honor, that's correct. And, in fact, there's case law out there, which I have right in front of me, that says that things that happen on sea voyages that are a result of the usual effect of the sea voyage are not unseaworthy conditions. Now, whether or not this is that, that's up to the jury to determine. And I think that's what I keep coming back to. This seems to me is that you have to argue, because it seems to me that you were not the trial lawyer. That's correct, Your Honor. The trial lawyer said, well, yeah, I think he said it was unseaworthy. I'm not sure from the record, but I think he said it was unseaworthy, and it was John's fault that it was. But the only testimony on that was the prior engineer. I can't remember his name. It was the prior captain. Oh, yeah, I couldn't pronounce it even if I could. Let's call him Frank. Frank, that works. Anyway, he said, yeah, in October the captain and I looked at that and I saw it was properly installed and it was perfect and these things don't come off by themselves. It was wonderful. That was his testimony. Essentially, yes. Okay. Now, there was no testimony contrary to that. I think there was speculation. You mean as to the fact that it wasn't working for a working condition in October? Yeah. There was, as far as I was aware from reading the record, no testimony contrary to that, Your Honor. Yeah, so if you say there's no testimony to that, then you had a good clamp at the time you left the dock and these things don't normally come off unless somebody's fiddled with them or something or other. You say, okay, well, that's fine. This one may be dead. But I suppose on that basis the jury could find that the vessel was seaworthy. I don't know. I think you're right, Your Honor, and that's what Fahrenkopf's testimony allows them to do. This vessel was, by all accounts, in perfect shape when it left. Someone must have fiddled with it. And there was no evidence to the contrary to his testimony. Is that correct? Not that I saw the record, no, Your Honor. I'm sure if there is plenty of evidence. Okay. Let me skip you over a little bit, and I don't mean to. But there's a motion for judgment notwithstanding the verdict. That's correct, Your Honor. And you've argued that well in your pleadings and all. But on the motion for new trial, that's where the judge, the old saying used to be, sits as the 13th juror, and the judges say, no, I don't sit as the 13th juror, but I will weigh the evidence and look at it, and I'll make a determination on the new trial motion. Correct, Your Honor. And as I'm reading the judge's decision, it's in the supplemental excerpt. I've got the wrong document. I get it. You probably already have it because you've been worrying about it. But it's at S.E.R. S.E.R. Oh, I extracted it from the record. The order denying the plaintiff's motion for a new trial, J.N.O.V. I didn't find in here in this document anything about the judge talking about the evidence of the trial and weighing on the new trial motion whether the evidence was sufficient to support whether the jury could have come to this conclusion under the evidence. I don't find it. No, he did not specifically address that. He did say that plaintiff's position would require the jury to or require him to ignore Fahrenkopf's testimony. If I remember correctly, Your Honor. Unfortunately, I don't have that document right in front of me. But I do think he made a comment that, at least at the end, after he gets to all the misconduct stuff, which is really the primary ground for the 59 motion, that he does say something to the effect that there was that it would require that the jury could have listened to Fahrenkopf. And if I'm sorry, I don't have that. Oh, I see. In any event, there's no reason for the Court to disregard Fahrenkopf's testimony. What happened on the misty blue, what injury resulted, are inherently factual questions that were explored thoroughly in the evidence and on cross-examination. The Court cannot say that construing the evidence most favorably to the defendants, the only reasonable conclusion was contrary to the verdict. That doesn't seem to be the new trial language. Well, Your Honor, I think that the new trial language is even stronger. I think if you look at the case law governing the new trial, NFRC v. 59, it's going to be reversed only if there's an absolute absence of evidence to support a jury's verdict. I see. Well, maybe that is stronger than it is now. I'm sorry, Your Honor. Even though he stuck it under. Could I see a motion for judgment as a matter of a higher standard? Yes, Your Honor. There's two. It gets a little confusing, because the motion was entitled one thing, a certain rule was cited in the motion 59, FRCP 59, that an appeal, the plaintiff cites FRCP 50B. Those are two entirely different rules. FRCP 50B is what is known as a renewed judgment for matter of law. And in that situation, it's reviewed to no vote. And you're looking for substantial evidence to support the verdict. And that is you're looking to see if reasonable people could differ and a reasonable person could come to that conclusion the jury came to. Two things wrong with that. Here I do think I have a preservation argument, Your Honor. There was no motion for directed verdict made below at all by plaintiff after his close of his trial, close of his evidence or at the end of the trial. FRCP 50B clearly requires that. The case law clearly requires that. So in order to challenge the evidence under 50B, you need to make a directed verdict motion. Plaintiff didn't. Now, plaintiff, so his ---- You didn't argue that, did you? Yes, I did argue that, Your Honor. You're looking ---- it's in my brief. Oh, you argued it. But, I mean, at the trial, when the trial lawyer was arguing to the court, he didn't cite the rule of 50 violation. Well, he may not have been in our responsive papers to the motion. However, Your Honor, I think we're entitled to raise alternative grounds for affirmance on an appeal. So even if it wasn't particularly raised in our opposition to the motion, I think it's fair for us to raise it here. That's his argument on appeal, which I think is disregarded because it wasn't preserved. Now, below he did cite FRCP 59, excuse me, which is a motion for new trial. And the motion for new trial is a whole different matter. That's been called and a challenge motion for new trial is to look if it's against the evidence and not just sufficiency evidence. And that's why this higher standard applies. That is, you have to look at whether there was an absolute absence of evidence to support the jury's verdict. And that's cited in the Samen case, which is 173F3rd. It's at point ---- it's at Site 1154, Note 5. And in fact, it's an FRCP 59 motion, denial of an FRCP 59 motion is referred to as virtually unassailable by Justice White. It was quoted in that particular footnote. So I think the motion for new trial, and Plaintiff seems to be making two arguments here, and I frankly can't quite get my arms around them, whether he's claiming a sufficiency of evidence or claiming it should have been a new trial. Either one he loses. If it's sufficiency of evidence under 50B, he didn't preserve it. If it's the FRCP 59 motion for new trial, there's clearly evidence in the record to support inclusion in this. There has to be absolutely no evidence. Perhaps if the boat were laying at the bottom of the ocean, maybe the argument could be made. And even that I'm not going to concede. But the jury looked at the evidence that was presented, as the judge pointed out, all the videotape, all the testimony, everything that was presented, Ferencoff's testimony, and said, this is, there's no reason for a new trial here. There's not an absolute absence of evidence, which is what he would have to have found in order to reverse and grant a new trial. And that's what you, that's the standard view. What if we didn't agree with you? What do we do? Don't agree with me? You don't have to agree with me. You have to agree with the jury. I didn't find it. But one of the thoughts might be that we would send it back and let the district judge consider the motion for new trial. And consider it according to the law that may be applicable to new trial motions. Obviously, Your Honor, the court is entitled. Whether I agree with it or not is not the point. I think that would be incorrect. I think that the court has to look at the verdict and determine whether there's an absolute absence of evidence. And then if there is, in the court's mind, which I don't think could possibly be concluded here, but if it is, then it's remanded back for a new trial. I don't know if a remand back to the district court to look at the evidence again after the district court already said that it did. I'm not sure what that would achieve. Yeah. I mean, certainly it's within the power to do whatever feels necessary. But I don't think that would achieve anything. It would just be a waste of time. I would like to just quickly talk about the Rick Johnson matter. First of all, there was no meaningful offer of proof made. And the offer of – well, let me just set the stage quickly here. Rick Johnson could have been called at any time during Plaintiff's case in chief. He claims that he was – that the opportunity was postponed due to a rescheduling error or rescheduling situation. That's not clear in the record. There's no record citations of that. But even if that were the case, Plaintiff had up to five days to do their trial. They could have called Rick Johnson at that time. He didn't. Then – He did, but he couldn't testify, wasn't he? I mean, he was held and then he left. My understanding, he was there, but I don't know if he was actually called. Well, that's not in the record. But I can't – there's nothing in the record about that. Okay. And then after the defendant had – defense had gone through most of their trial, the jury sent in this note on the next to last day of trial saying, what about Rick Johnson, essentially? Yeah. The court at that time said we're going to say he's unavailable. The plaintiff agreed with that at that point, said that sounds good to me, essentially. The next day on the last day of trial, when defendants were summing up their last witness, the plaintiff comes in and says I want to call this rebuttal witness. And the court essentially said it's too late. You had your chance. And even on the grounds that he wanted to bring him in for the plane tickets and the winterizing of the pump, that's not anything close to what he has in his declaration, which is all kinds of things. And I would also like to point out that the declaration was properly struck by the court as not being in accordance with the rules. And there's no error assigned to that. So it's our position the declaration is not even in the record before this Court. And so the plaintiff cannot rely on that. If there are no further questions, Your Honor. All right. Thank you, counsel. Thank you very much. Thank you. Just to sum up and reply briefly, with respect to Rick Johnson, there was mention in the record because I had a discussion with the trial judge about Rick Johnson being out in the hall for a day, but he wasn't able to testify because a doctor for the defendant was called out of order as a matter of professional courtesy. I agreed with Mr. Markovich to let that doctor testify so he could leave. That was in the record as part of my discussion with the court when I made a motion for two different motions, one in offer of proof and then later when I made the motion for a new trial, JNOV, I actually had the affidavit, which I believe fairly well corroborated what my offer of proof was. So I think the record does show that Captain Johnson was available on two occasions at the court. Did you actually call him as a witness? He was identified. Yes, I did. You said at one point. I said, Your Honor. Was that in the rebuttal or was that in your case? Did you call him? I was, as I recall, I was ready to call Mr. Johnson as a witness. In plaintiff's case in chief, Mr. Markovich said, Mr. Urey, we have this doctor that, you know, is on standby here. We need to get him in and out of here. So as a matter of professional courtesy, Mr. Johnson didn't testify. I believe that in the morning every day I gave a – I believe I gave a list of witnesses for that day to the judge. Mr. Johnson was on that witness list for that day. That got changed as a matter of courtesy to defense counsel so I wouldn't have to pay the extra money to have the doctor come back later. Did the defense counsel object when you asked to call Mr. Johnson in the rebuttal? Yes, he did. He objected. And I believe – I believe that's when I made my offer of proof, which was later followed by the affidavit. Next, I think, which is important, page 5 of my reply brief, I cited what this Ninth Circuit followed when they applied the standard in Exxon v. Sophic, the Supreme Court case. They said this Court in FAR applied the clearly erroneous standard applied in Exxon v. Sophic, Inc. as not meeting no review at all. Rather, this Court ruled as a matter of law, FAR's failure to exercise care for its own safety is not a superseding intervening cause of its injuries and thus not a bar to recovery. I think that language that the Ninth Circuit adopted from the Supreme Court is very relevant here because it takes away some of the arguments about what is the proper standard to review. Is it abuse of discretion? Is it review to no vote? Is this issue exclusion, et cetera? I went through that time and time again. I think this Court said that when it comes to the issue of whether a seaman caused his own injury or is responsible for his own injury, the Court, as a matter of law, is not going to apply assumption to risk and they're not going to apply the strictest standard of no review. I think that's what happened in the last FAR case. The facts of that case were last FAR was standing underneath a piece of engine block that he ordered to be lifted over his head and the hook came out and injured his foot. The Court, this Court in Seattle, found that he assumed the risk by standing in an improper place or he was at fault for his own injury. The Ninth Circuit said no. Even if his own negligence was egregious, even if he was at fault for not standing where he shouldn't have been or, like in this case of John's, didn't properly apply the hose clamp tight, that doesn't bar recovery as a matter of law. It only serves to mitigate his damages. That's why I believe this Court should reverse. If there's any reason, amongst other reasons, that is one of the fundamental reasons why this case should be reversed, because it goes against this Court's rule, the Supreme Court's ruling in Exxon, it goes against FAR, and it also even goes against Simeona v. Hiner, because this Court went a step further a couple of years ago in Simeona when they said, when you're following orders, you're not comparatively at fault. Doesn't that also mean that there isn't fault? I mean, the quotation. Yes. Counsel, you're over your time. Thank you. We've read the cases. Thank you very much. All right. John's v. Missy Blue is submitted and will take up Washington State Department of Transportation v. Seacoast Towing.
judges: Thompson, T. Nelson, Wardlaw